UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CARPENTERS LOCAL UNION 2832,
CARPENTERS LOCAL UNION 1349,

        Plaintiffs,

  v.                                                 Case No. 11-C-0252

EGGERS INDUSTRIES INC.,

        Defendant.

---

## DECISION AND ORDER

---

This is an action to compel arbitration under separate collective bargaining agreements between Eggers Industries ("Eggers") and the two unions representing employees at Eggers' two separate plants. The Unions filed a grievance challenging the increase in the employee share of the premium that its members were required to pay for health insurance coverage under the Company's self-funded Health and Disability Benefits Plan. When the initial steps in the grievance process failed to resolve the matter to their satisfaction, the Unions requested arbitration. Eggers initially offered to proceed to a bifurcated arbitration, but insisted that the grievance was not procedurally or substantively arbitrable and indicated an intent to reserve its right to have the issues decided *de novo* by a federal court. Viewing Eggers' reservation of rights as a refusal to arbitrate, the Unions commenced this action to compel arbitration pursuant to the United States Arbitration Act, 9 U.S.C. § 1, et seq., and § 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185. Although it initially denied that its reservation of rights amounted to a refusal to arbitrate, Eggers now takes the position that it has no duty to proceed to arbitration since the matter in dispute is not

arbitrable. The issue has been fully briefed and argued, and is ripe for decision. For the reasons that follow, the Unions motion will be granted.

**BACKGROUND**

Eggers is a manufacturer of architectural wood products for the commercial construction industry. It operates two plants in Wisconsin: one plant in Neenah and the other in Two Rivers. Eggers' Neenah employees are represented by Local 2832, and its Two Rivers employees are represented by Local 1349.

Eggers offers health insurance to its union and non-union employees and their families under a self-insured plan ("the Plan") covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Eggers is the Plan Sponsor, Administrator, and named Fiduciary for the Plan. Eggers retains the services of a third party benefits administrator to process claims and handle other duties for the Plan. The employer assumes sole responsibility for funding the Plan benefits out of general assets. Employees help cover some of the costs of covered benefits, however, through regular deductions from the employees' paychecks, deductibles, co-pays and Plan Participation amounts as described in the Schedule of Benefits. "All claim payments and reimbursements are paid out of the general assets of the employer and there is no separate fund that is used to pay promised benefits." (Eggers Industries Inc Group Health Benefit Plan Summary of Benefit Plan Description, Decl. of Ann Duebner, Ex. 2, pg. 1.)

Under the respective collective bargaining agreements with the Unions representing employees at its Neenah and Two Rivers plants, Eggers agreed to pay a percentage of the monthly premium for the health plan for each employee. The percentage the Company promised to pay varied depending

2

on the coverage, and corresponding deductible, the employee selected. Article 21 of the Local 2832 CBA reads as follows:

> Effective May 15, 2008, the Company will pay 70% of the monthly premium of the (Gold) $250/$750 deductible plan, 80% of the monthly premium of the (Silver) $500/$750 deductible plan and 90% of the monthly premium for the (Bronze) $1,000/$2,000 deductible plan. Each January 1st thereafter, new rates may be established based on increases or decreases in the plans' cost.

(Coenen Dcl. Exh. A, Article 21.1 (b).) The relevant portion of the Local 1349 CBA, Article XIV, Section 3, reads as follows:

> The Company agrees to pay 80% of the premium for a Red Plan and 90% of the premium for a White Plan.

(Coenen Dcl. Exh. F, Article XIV Section 3.)

Each of the CBAs also contains a grievance procedure for resolving disputes that arise thereunder culminating in arbitration. In its CBA with Local 2832, Eggers agreed to arbitrate "any dispute or grievance involving the interpretation or application of this agreement" that was not resolved through the initial steps of the procedure. (Coenen Decl., Ex. A, at 32.) The Arbitration Clause in Eggers' agreement with Local 1349 appears more narrow. It provides for arbitration covering wages (as defined in the agreement), hours, working conditions and seniority. (Coenen Decl., Ex. F, at 7.)

In early 2011, Eggers announced increases in the rates for the Health and Disability Plan at its two plants. The Unions filed grievances alleging that the increases were in violation of the provisions of the CBAs governing the employer share of the premium for health coverage. Local 2832 alleged that the new rates were in violation of Article 21 of the CBA, and Local 1349 alleged that employees are overpaying for their healthcare coverage in violation of Article XIV. (Coenen Decl., Exs. H and

3

J.) The Company denied the grievances on the grounds that they were untimely, and that setting the premium for health insurance was a management function and thus not a valid subject for a grievance. (Coenen Decl., Ex. I.) The Unions thereupon requested arbitration, and when Eggers insisted on reserving its right to judicial review of the issue of whether the grievance was arbitrable, the Unions commenced this action.

## ANALYSIS

The Supreme Court made clear in the Steelworkers Trilogy that arbitration is the preferred method of resolving labor disputes. *See Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). In furtherance of this policy, a duty to arbitrate is imposed whenever a collective bargaining agreement "can be reasonably interpreted to impose such a duty." *Graphic Communications Union v. Chicago Tribune Company*, 794 F.2d 1222, 1225 (7th Cir. 1986). In other words, there is a presumption in favor of arbitrability such that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83.

On the other hand, the duty to arbitrate is purely a creation of contract; courts are not authorized to compel a party to arbitrate in the absence of an agreement to do so. *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374 (1974). "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 648-49 (1986). The

4

question of arbitrability – whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Warrior & Gulf*, 363 U.S. at 582-583.

The language of the arbitration clauses of the two CBAs must form the basis of the Court's analysis. *Karl Schmidt Unisia, Inc. v. International Union, United Auto., Aerospace*, 628 F.3d 909, 913 (7th Cir. 2010). The language of Eggers' CBA with Local 2832 is broad. Article 21 of the CBA defines a grievance as "any difference between the Company and an employee covered by this agreement as to any matter involving interpretation or application of any of the provisions of this agreement." (Coenen Decl., Ex. A at 31.) The Local 2832 CBA further provides that any dispute or grievance that is not resolved in the first two steps of the grievance process shall be submitted to arbitration. (*Id.* Art. 20.2.) This language is sufficiently broad to give rise to a presumption in favor of arbitrability.

Eggers' CBA with Local 1349 is ambiguous and less clear. Article II to the Local 1349 CBA states:

> It is mutually agreed that this agreement contains a provision for the complete disposition of disputes which may arise between the parties, including arbitration, and that therefore, during the term of this agreement the union shall not call and employees shall not participate in any strike (including but not limited to sympathy strikes), slowdowns, stay-ins, work stoppage, walkouts, sit-down strikes, and the Company shall not impose a lock-out. In case either party violates this section of the contract, the other party shall have the option of declaring this contract null and void . . . ..

(Coenen, Ex. F.) This language suggests that any disputes between the parties over the application or interpretation of the CBA are to be resolved by arbitration. It is for that reason that both of the parties are foregoing more costly measures such as strikes and lockouts. *See International Broth. of*

*Elec. Workers, Local 21 v. Illinois Bell Telephone*, 491 F.3d 685, 689 (7th Cir. 2007) ("Arbitration provisions are generally considered reciprocity for no-strike provisions.").

The Local 1349 CBA provides that "[w]hen any dispute or misunderstanding arises as to wages, or wage standard, hours, working conditions, lay-offs, transfers and promotions, rehiring or discharge of individual employees affected by this agreement, such dispute or misunderstanding will be considered a grievance . . . ." (Coenen Decl. Ex. F. at 6.) The CBA goes on to say that if the grievance is not resolved at one of the earlier steps outlined in the grievance procedure, "the Union or the Company may request that the matter be submitted to arbitration per Article IV, except as may be noted elsewhere in this Agreement." (*Id.*) Article IV sets forth the procedure for selecting an arbitrator "[u]pon written demand of either the Company or the Union for arbitration covering wages (by wages is meant only individual disputes or complaints relative to hourly job evaluations as set forth in Article XIII Section 2 (b) and not other increases), hours, working conditions and seniority." (*Id.*, Ex. F. at 7.) While the Company's contribution for employee health care is not listed as one of the items for which arbitration can be requested, nowhere in the CBA is there any language excluding that item from the grievance process or arbitration.

In *Printing Specialties and Paper Products Union Local 680 v. Nabisco Brands* the Seventh Circuit found a nearly identical arbitration clause that read, "any grievance or misunderstanding involving wages, hours or working conditions" to be broad because it contained no language indicating the list was exclusive. 833 F.2d 102, 104 (7th Cir. 1987). Even if it is not facially broad, the arbitration clause is at least ambiguous concerning its coverage, and where the terms of an arbitration clause are ambiguous, doubts must be resolved in favor of allowing arbitration. *See Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S. Ct. 2847, 2857 (2010) ("The first principle

6

is that where, as here, parties concede that they have agreed to arbitrate some matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.") (internal quotes omitted).

Eggers argues, however, that any presumption of arbitrability that would otherwise apply is overcome in this case. The presumption of arbitration can only be overcome in one of two ways: by showing an express provision excluding the particular grievance from arbitration or by presenting "the most forceful" evidence of a purpose to exclude a certain type of claim from arbitration. *Warrior & Gulf*, 363 U.S. at 584-85. Here, Eggers has failed to make either showing.

No express provision excludes arbitration of the particular issue for which the Court is compelling arbitration. Eggers states that it has reserved all management rights not listed in the CBAs. But such a general reservation does not expressly exclude from arbitration a dispute over whether the Company is paying the stated *percentage* of the predetermined premium for the coverage.

Eggers also attempts to overcome the presumption of arbitrability by putting forth purported "most forceful evidence" that the parties meant to exclude the grievance at issue from arbitration. *Warrior & Gulf*, 363 U.S. at 584-85. Eggers suggests that its course of dealing with the Unions demonstrates the parties' intent not to arbitrate disputes over health care costs. Eggers notes the lack of grievances for this issue over the past thirty years. It also points out that the parties have disputed the total amount of the premiums in the past without arbitration. Even if the Court were to consider the prior dealings relevant, they do not rise to the level of "most forceful evidence" of an intent between the parties to not arbitrate this issue. The Seventh Circuit has held that "bargaining history may properly be considered." *Oil, Chem. & Atomic Workers Int'l Union, Local 7-1 v. Amoco Oil Co.*,

7

883 F.2d 581, 587 (7th Cir. 1989). In *Amoco*, the Court determined that 30 years of failed attempts to negotiate a particular phrase was most forceful evidence that the parties had not agreed to arbitrate an issue. That is not the case with Eggers and the Unions – their dispute is more recent. Also, unlike the union in *Amoco*, the Unions here are not attempting to obtain through arbitration something they tried but failed to secure through collective bargaining negotiations.

Eggers relies on a number of cases regarding its "most forceful evidence" argument. First, it avers that *Printing Specialties* is on point. But the CBA at issue in *Nabisco* was devoid of any specific plan term; the CBA simply indicated that Nabisco would maintain a plan. The disputed terms were in a completely separate agreement. *Id.* In contrast, Eggers' CBAs do contain specific agreements between the company and the Unions about how the cost of the premium is to be apportioned – indeed the CBAs even lay out the specific percentages. Unlike the CBAs at issue in *Nabisco*, the CBAs in the instant case do contain terms at issue. If anything, the analysis in *Nabisco* supports arbitration where, as here, the CBAs contain specific provisions regarding percentage split of health care costs.

The situation in *Local 232, Allied Industrial Workers v. Briggs & Stratton Corp.*, 837 F.2d 782 (7th Cir. 1988), is similarly distinguishable. *Briggs & Stratton* held that a CBA with a passing reference to an ERISA plan does not incorporate the arbitration process of the CBA into the SPD. Here, in contrast, the disputed terms are directly located in the CBAs between Eggers and the Unions. As such, *Briggs & Stratton* is not controlling. Key to both of these distinguished cases is the lack of explicit terms or promises in the CBA regarding the disputed facets of the program in question. In the case before the Court, the CBA clearly sets forth the disputed terms. The CBAs state that Eggers is to pay a specific percentage of the premium charged for the coverage selected by the employee. It is

the parties' dispute over the interpretation and application of this language that the arbitrator is asked to decide.

Eggers contends that in effect the Unions' grievances amount to a challenge to the Plan Administrator's determination of the 2011 Plan Premium for their members' health coverage. For the Court to grant the Unions' motion, Eggers contends, "it would have to conclude that the parties agreed in their CBAs to allow the arbitrator to: (1) assume the role of an ERISA-fiduciary; (2) substitute his or her judgment for that of the Plan Administrator; and (3) literally determine what the 2011 Plan Premium should have been." (Br. In Opp. at 2.) The parties never agreed to grant the arbitrator such authority, Eggers argues. Rather, the right and ERISA-governed fiduciary duty to determine the premium rests with, and is expressly and exclusively reserved to, the Plan Administrator alone. Because it never agreed to arbitrate the amount of the Plan Premium, Eggers argues that the Unions' motion to compel arbitration should be denied and its action dismissed.

But in holding that the dispute between the parties is arbitrable, this court is reaching no conclusion about what the arbitrator will do. To go further would involve the Court in the merits of the dispute, something that is expressly forbidden once a court determines that the dispute falls within the arbitration clause of the CBA. *AT & T Techs,* 475 U.S. at 650. What the Court has decided is that the parties agreed that their dispute over the meaning and application of the provisions of their CBAs setting out the employer share of the premium is among those issues that would be decided by an arbitrator if they could reach agreement themselves. In *Karl Schmidt Unisia, Inc. v. International Union, United Auto., Aerospace*, the Seventh Circuit held that where the parties have negotiated the benefit language of an ERISA Plan at issue directly into the CBA, disputes over the meaning and application of that language are arbitrable. 628 F.3d at 615. Given the self-funded character of the

9

Plan and the fact that all claim payments and reimbursements are paid out of Eggers' general assets and there is no separate fund that is used to pay promised benefits, it is not even clear on this record what the term "premium" means. The meaning of the term and whether Eggers is paying its promised share are the subject of the dispute. Nothing in the CBAs indicates that disputes over these provisions are outside the scope of the arbitration clauses.

Several issues remain and require only brief mention. Eggers' contention that the Unions' grievances are untimely under the CBAs is likewise subject to arbitration. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("Thus 'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.") (internal quotes omitted). Eggers request for a jury trial under the Federal Arbitration Act will be denied because "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam*, 537 U.S. at 83.

Finally, the Unions' request for attorneys fees will also be denied. "Normally when no statute authorizes the award of attorney's fees . . . the prevailing party is entitled to attorney's fees only if his opponent's . . . defense was frivolous, which our cases define to mean brought in bad faith – brought to harass rather than to win." *Miller Brewing Co. v. Brewery Workers Local Union No. 9,* 739 F.2d 1159, 1167 (7th Cir. 1984). This initial standard has evolved to an objectively reasonable test where a finding of bad faith is not essential. *Local 879, Allied Indus. Workers of Am., v. Chrysler Marine Corp.*, 819 F.2d 786, 791 (7th Cir. 1987); *see Brown v. National Bd. of Medical Examiners*, 800 F.2d 168, 171 (7th Cir.1986). Here attorneys' fees are not appropriate because Eggers' position is not objectively unreasonable and does not appear to be advanced for any improper purpose.

Accordingly, and for the reasons set forth above, Eggers has failed to overcome the presumption in favor or arbitration. The Unions' motion to compel arbitration is granted, and the Clerk is directed to enter judgment in favor of the Unions directing Eggers to submit to arbitration the grievances concerning the increased premiums for health insurance.

Dated this  15th  day of July, 2011.

s/ William C. Griesbach
William C. Griesbach
United States District Judge